UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
┌─────────────────────────────────────┐
│                                      │
│  BRUNO K. MPOY,                      │
│                                      │
│      Plaintiff,                      │
│                                      │
│          v.                          │      Civil Action No. 09-1140 (JEB)
│                                      │
│  ADRIAN FENTY, et al.,               │
│                                      │
│      Defendants.                     │
│                                      │
└─────────────────────────────────────┘
```

<u>**MEMORANDUM OPINION**</u>

Plaintiff Bruno Mpoy was a special-education teacher at Ludlow Elementary School in the District of Columbia during the 2007-08 school year, following which he was terminated. He believes that his termination was in retaliation for his disclosure to then-District of Columbia Public Schools Chancellor Michelle Rhee and others that Ludlow's Principal, Donald Presswood, had encouraged him to alter student test scores. As a result of his termination, Plaintiff brought this suit, which alleges six causes of action against the District of Columbia, Michelle Rhee, and Donald Presswood (collectively, "the District Defendants"). Two of these counts also name The New Teacher Project (TNTP), the non-profit corporation that recruited Plaintiff to teach at Ludlow. The District Defendants and TNTP have each now filed a Motion to Dismiss, which raise numerous challenges to Plaintiff's causes of action. The Court ultimately will let much of the case proceed against the District Defendants, but it will dismiss the suit against TNTP.

**I.      Background**

According to Plaintiff's Second Amended Complaint, which must be presumed true for purposes of this Motion, he was accepted into The New Teacher Project/DC Teaching Fellows

(DCTF) program as a DC Teaching Fellow "to serve as a special education teacher in DC Public Schools." SAC, ¶¶ 28-30.  In exchange for his teaching, he was to "receive tuition support for working towards and receiving his teaching certification at George Washington University ('GWU')." Id., ¶ 31.  "DCPS, DCTF, and/or TNTP paid at least fifty-percent (50%) of Plaintiff's tuition for his enrollment at GWU." Id., ¶ 36.  Plaintiff began attending his GWU classes in summer 2007.  Id., ¶ 37.

 "Plaintiff was offered in writing a position and committed to teach in DCPS for a minimum of four years." Id., ¶ 32.  He was employed "as a special education teacher for DCPS at Ludlow Elementary School [ ] during the 2007-2008 school year." Id., ¶ 2.  Donald Presswood, the principal of Ludlow, "instructed teachers [there], including [Plaintiff], to change and falsify student records, to alter test scores on standardized assessments, and to fabricate levels of student achievement." Id., ¶ 4.  Plaintiff refused to comply with these instructions.  Id., ¶ 5.

Plaintiff also "observed other suspicious practices in testing and grading procedures at Ludlow, and became aware of anomalies between test results and demonstrated student capabilities." Id., ¶ 6.  Plaintiff was "investigated, harassed, threatened, and suspended" in retaliation for his "refusal to follow Mr. Presswood's instructions and participate in fraudulent, unethical, and otherwise wrongful activity." Id., ¶ 7.

Plaintiff reported this to Michelle Rhee, then-Chancellor of DCPS, and to DCPS administrators, informing them of "Presswood's falsifying student test scores and performance … [and the] multiple problems he encountered while teaching." Id., ¶¶ 9-10.  Rhee and DCPS administrators did not respond.  Id., ¶ 11.  Instead, Plaintiff "was investigated, harassed,

threatened, and ultimately terminated from his teaching position at the direction of Chancellor

Rhee, DCPS, and Mr. Presswood" in retaliation for Plaintiff's reports.  Id., ¶¶ 12-13.

"As a result of his wrongful termination, Plaintiff stopped receiving tuition support from

DCTF, TNTP, and/or DCPS."  Id., ¶ 147.  Plaintiff does not have "the financial means necessary

to continue the GWU masters program."  Id., ¶ 108.  Neither is Plaintiff able "to find meaningful

employment as an educational professional because of his wrongful termination from DCPS and

the DCTF program."  Id., ¶ 107.

Plaintiff sets forth six counts in his Second Amended Complaint: deprivation of his rights

under 42 U.S.C. § 1983, retaliation in violation of the D.C. Whistleblower Act, retaliation in

violation of the D.C. Human Rights Act, breach of contract for wrongful termination, breach of

contract for failure to pay tuition as promised, and civil conspiracy to wrongfully terminate

Plaintiff.  All counts are asserted against the District Defendants, and the last two also name

TNTP.

The District Defendants and TNTP now each seek to dismiss the suit under Federal Rule

of Civil Procedure 12(b)(6), as failing to state a claim upon which relief can be granted, or, in the

alternative, under Rule 56 for summary judgment.

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a

claim upon which relief can be granted."  When the sufficiency of a complaint is challenged

under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be

liberally construed in plaintiff's favor.  Leatherman v. Tarrant Cnty. Narcotics & Coordination

Unit, 507 U.S. 163, 164 (1993).  Although the notice pleading rules are "not meant to impose a

great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and

"detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.

In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   Analysis

The District Defendants and TNTP each move to dismiss the claims against them on various grounds.  Because the two Motions present no overlapping arguments, the Court will address them separately.  It will first analyze the points raised by the District Defendants and then those by TNTP.

A.    <u>District Defendants</u>

The District Defendants raise myriad challenges to Plaintiff's causes of action.  For ease of organization, the Court will discuss them in the following order.  First, the Court will analyze the District's contention that Plaintiff fails to set forth a cognizable claim for municipal liability under § 1983.  Next, it will consider whether the claims against Michelle Rhee and Donald Presswood in their official capacities should be dismissed.  Third, it will address whether both breach-of-contract counts and the civil-conspiracy count are deficient for Plaintiff's failure to exhaust his administrative remedies.  Fourth, it will discuss whether Plaintiff's claims should be dismissed for failure to satisfy the notice requirements of D.C. Code § 12-309.  Finally, it will assess whether punitive damages can be obtained against the District of Columbia.[1]

1.    *42 U.S.C. § 1983 – Count I*

Count I asserts a deprivation of Plaintiff's constitutional rights under 42 U.S.C. § 1983 – namely, unlawful retaliation for Plaintiff's exercise of his protected First Amendment speech rights.  In moving to dismiss, the District Defendants are correct when they say that, to establish <u>municipal</u> liability under 42 U.S.C. § 1983, "Plaintiff must establish that the deprivation of his constitutional rights was caused by a custom, policy or practice of the District."  Mot. at 5-6 (citing <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691-94 (1978)).  As he points out in his Opposition, however, and as Count I of the SAC makes clear, Plaintiff is not claiming municipal liability under § 1983; instead, this count "relate[s] only to the retaliatory acts of Rhee and Presswood in their individual capacities."  Opp. at 8.

---

[1] Other than mentioning Count II in their introduction as one of the counts Plaintiff has brought, the District Defendants make no mention of it or the D.C. Whistleblower Protection Act in the remainder of their Motion.  The Court thus assumes they are not seeking dismissal of Count II at this time.

This Circuit has adopted the "course of proceedings" test to determine in what capacity a plaintiff seeks to impose liability on a government official if that capacity is not specified in the complaint. In Daskalea v. Dist. of Columbia, 227 F.3d 433 (D.C. Cir. 2000), the court held:

> Neither the complaint nor any other pleading filed by plaintiff indicates whether Moore was charged in her official or her individual capacity. In some circuits, that would be the end of the matter, as they require a plaintiff who seeks personal liability to plead specifically that the suit is brought against the defendant in her individual capacity. Although it has not definitively resolved the issue ... the Supreme Court has typically looked instead to the "course of proceedings" to determine the nature of an action. Following the Supreme Court's lead, this circuit has joined those of its sisters that employ the "course of proceedings" approach.

Id. at 448 (internal citation, footnotes, and quotation omitted). Utilizing that test, the Court looks at the complaint, the pleadings, and other indicia to determine if the individual defendants could have been put "on notice that [they are] being sued in [their] individual capacit[ies]." Id. (considering complaint, answer to complaint, trial briefs, pretrial deposition, and statements made during trial to determine whether, under course-of-proceedings analysis, official was sued in her individual capacity). The Court believes it is manifest that Plaintiff is suing Rhee and Presswood in their individual capacities only; indeed, Plaintiff's Opposition expressly so states. See Opp. at 8. To eliminate any possible ambiguity, this Court holds that to the extent Count I may be read to include the District of Columbia or Rhee and Presswood in their official capacities, it is dismissed.

It is permissible, moreover, for Count I to proceed only against Rhee and Presswood in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, '[o]n the merits, to establish personal liability in a § 1983 action, it is enough to

show that the official, acting under color of state law, caused the deprivation of a federal right.'"

(emphasis original) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1991))).

> 2. *Michelle Rhee & Donald Presswood*

Former Chancellor Rhee and former Principal Presswood are named in Counts I and VI

of this action. See SAC, ¶¶ 109-19, 150-56. The District Defendants contend that these two are

improperly named Defendants because official-capacity suits are, in effect, suits against the

District itself; there is thus no need to separately name them. Mot. at 14-15. As discussed in

Section III(A)(1), *supra*, Plaintiff's claims against Rhee and Presswood in Count I clearly name

them only in their individual capacities. That analysis also holds true as to Count VI. These two

Defendants will thus not be dismissed.

> 3. *Failure to Exhaust – Counts IV, V & VI*

The District Defendants next assert that Counts IV, V, and VI must be dismissed because

the Comprehensive Merit Personnel Act (CMPA) provides the exclusive remedy for personnel

grievances in the District of Columbia, and exhaustion of the CMPA's remedies is a prerequisite

to bringing suit. See Mot. at 8-10. "'Exhaustion' [ ] describes two distinct legal concepts."

Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004). "The first is a judicially

created doctrine requiring parties who seek to challenge agency action to exhaust available

administrative remedies before bringing their case to court." Id. The second "arises when

Congress requires resort to the administrative process as a predicate to judicial review." Id.

Only the second is jurisdictional. Id. Courts are to "presume exhaustion is non-jurisdictional

unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an

action until the administrative agency has come to a decision.'" Id. at 1248.

Exhaustion of the CMPA's administrative remedies is, in fact, a jurisdictional requirement to obtaining review in D.C. Superior Court. See, e.g., Robinson v. Dist. of Columbia, 748 A.2d 409, 411 n.4 (D.C. 2000).  As the District Defendants admit, however, Mot. at 10, there is no binding precedent resolving the issue of "whether this D.C. exhaustion requirement is better understood as jurisdictional or nonjurisdictional in federal court." Johnson v. Dist. of Columbia, 552 F.3d 806, 811 n.2 (D.C. Cir. 2008).  Because this Court can find in the CMPA no "clear, unequivocal terms that [it] is barred from hearing [these] action[s] until the administrative agency has come to a decision" it will presume exhaustion is not a jurisdictional requirement for this Court.

Where exhaustion is not a jurisdictional requirement, it is typically an affirmative defense that may be raised by a defendant. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)).  Here, however, there is no dispute that Plaintiff failed to exhaust; instead, he argues he was unable to do so.  See Opp. at 12-13.  For non-jurisdictional exhaustion requirements, "it is [ ] well established that [they are] 'not to be applied inflexibly.'  One of the primary situations in which a plaintiff should not be forced to exhaust his administrative remedies is where to do so would be futile." Gemmell v. FAA, 558 F. Supp. 918, 920 (D.D.C. 1982) (internal citations omitted) (quoting McGee v. United States, 402 U.S. 479, 483 (1971) (declining to dismiss for failure to exhaust where probationary employees could not appeal their termination to the Merit Systems Protection Board)); see also Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir. 1984) ("The exhaustion requirement is not in general jurisdictional in nature, but rather must be applied in accord with its purposes.  When the reasons supporting the doctrine are found inapplicable, the doctrine should not be blindly applied.") (internal quotation marks and citation omitted).  As the D.C. Circuit has noted:

> The exhaustion requirement serves four primary purposes.  First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of administrative processes [that] could * * * encourag[e] people to ignore its procedures."  Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors.  Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding.  Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency.

Andrade, 729 F.2d at 1484 (internal citation omitted).

In this case, Plaintiff attempted to initiate the traditional CMPA process by pursuing a claim through the District's Office of Employee Appeals (OEA).  See Opp., Exh. A (OEA decision).  The OEA determined it did not have jurisdiction under the CMPA because of Plaintiff's probationary status.  Id.  Plaintiff could go no further in pursuing his CMPA claim; he has effectively – if not legally – exhausted the CMPA's administrative remedies.

Barring Plaintiff's claims, furthermore, would not promote any of the exhaustion requirement's purposes set forth by the D.C. Circuit.  First, Plaintiff is not flouting the administrative process here; on the contrary, he attempted to go through that process, but was prohibited from doing so.  Second, the agency cannot apply its expertise or correct its errors since it has declined to entertain Plaintiff's administrative remedies.  Third, dismissing these counts would not aid judicial review by allowing for more developed facts in an administrative proceeding where the process is not open to Plaintiff.  Finally, for the same reason there is no risk of repetitive factfinding.  Therefore, as exhaustion of the CMPA is not jurisdictional and the Court finds "the reasons supporting the doctrine are [ ] inapplicable," it will not "blindly appl[y]" the doctrine to require Plaintiff to exhaust an administrative remedy that he is statutorily

prohibited from exhausting. See Andrade, 729 F.2d at 1484. The District Defendants' motion to dismiss Counts IV, V, and VI due to failure to exhaust will thus be denied.

### 4. *D.C. Code § 12-309 – Counts III, IV, V & VI*

Defendants also argue that Plaintiff's claims for unliquidated damages should be dismissed for failure to satisfy the notice requirements of D.C. Code § 12-309. See Mot. at 11-14. Section 12-309 of the D.C. Code states, in relevant part:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

Compliance with this notice requirement is a mandatory prerequisite for everyone bringing a tort claim against the District of Columbia. See Blocker-Burnette v. Dist. of Columbia, 730 F. Supp. 2d 200, 203 (D.D.C. 2010); Dist. of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995). Because filing suit against the District of Columbia represents a waiver of the District's sovereign immunity, "section 12-309 is to be construed narrowly against claimants." Dunmore, 662 A.2d at 1359; see also Blocker-Burnette, 730 F. Supp. 2d at 203 ("Courts should strictly construe Section 12-309's notice requirements." (quoting Day v. Dist. of Columbia Dep't of Consumer & Regulatory Affairs, 191 F. Supp. 2d 154, 158 (D.D.C. 2002))). As courts in this District have previously held, "Only two types of notice can satisfy the requirements of Section 12-309[]: (1) a written notice to the Mayor of the District of Columbia, or (2) a police report prepared in the regular course of duty." Blocker-Burnette, 730 F. Supp. 2d at 204 (citing Brown v. Dist. of Columbia, 251 F. Supp. 2d 152, 165 (D.D.C. 2003)).

Plaintiff claims § 12-309 does not apply to his claims under the DCHRA because he only seeks equitable relief under that statute, Opp. at 14 (citing SAC, ¶ 158); it does not apply to his

breach-of-contract claims because § 12-309 only applies to tort claims, <u>id.</u> at 14-15; and it does not apply to his civil-conspiracy claim because that claim is directed only against individual defendants in their individual capacities.  <u>Id.</u> at 15.  The Court will address each of these arguments in turn.

      a. Count III: D.C. Human Rights Act

  Section 12-309 "applies to claims for <u>unliquidated damages</u> brought against the District of Columbia under the DCHRA."  <u>Owens v. Dist. of Columbia</u>, 993 A.2d 1085, 1089 (D.C. 2010) (emphasis added); <u>see also</u> <u>Giardino v. Dist. of Columbia</u>, 252 F.R.D. 18, 23  (D.D.C. 2008) ("[A] plaintiff bringing claims under the DCHRA for <u>unliquidated damages</u> is not excused from providing notice pursuant to § 12-309.") (emphasis added);  <u>Byrd v. Dist. of Columbia</u>, 538 F. Supp. 2d 170, 175-76 (D.D.C. 2008) (dismissing unliquidated claims brought under DCHRA for failure to provide mandatory notice pursuant to § 12-309).  Section 12-309 does not apply, however, to claims for equitable relief.  <u>See</u> <u>Blocker-Burnette</u>, 730 F. Supp. 2d at 205 ("Section 12-309 does not bar plaintiff's request for [ ] <u>equitable</u> relief, such as reinstatement to her job without a break in service and an injunction restraining defendants and its agents from discriminating against her." (emphasis added) (citing <u>Elzeneiny v. Dist. of Columbia</u>, 699 F. Supp. 2d 31, 34-35 (D.D.C. 2010))).  In regard to his DCHRA claim, Plaintiff here seeks only equitable relief.  <u>See</u> SAC, ¶ 158.  This claim, therefore, is not subject to the notice requirement of § 12-309.

      b. Counts IV & V: Breach of Contract

  Neither does § 12-309 bar Counts IV and V, which are for breach of contract.  As the District of Columbia Court of Appeals has stated:

> [W]e have never actually applied § 12-309 to a claim for breach of
> contract .... [T]he plain language of the statute [ ] applies to actions

for unliquidated "damages to person or property."

The phrase "damages to person or property" is distinctly
inapplicable to claims based on a breach of contract.  BLACK'S
LAW DICTIONARY defines the word "damages" as follows:

> A pecuniary compensation or indemnity, which
> may be recovered in the courts by any person who
> has suffered loss, detriment, or injury, whether to
> his [or her] person, property, or rights, through the
> unlawful act or omission or negligence of another.
> A sum of money awarded to a person injured by the
> tort of another.

BLACK'S LAW DICTIONARY 351-52 (5th ed.1979).  Thus,
according to the plain meaning of the language of § 12-309, it
applies only to actions sounding in tort.

Dist. of Columbia v. Campbell, 580 A.2d 1295, 1301-02 (D.C.1990) (citing Black's Law

Dictionary 351-52 (5th ed. 1979)).  Therefore, as Counts IV and V are labeled "Breach of

Contract," "defendant's attempt to apply § 12–309 to a contract claim must be rejected."

See Bowers v. Dist. of Columbia, No. 10-CV-2056, 2011 WL 2160945, at *6 (D.D.C.

June 2, 2011).

### c.   Count VI: Civil Conspiracy

Finally, § 12-309 only applies to an "action … against the District of Columbia."

D.C. Code § 12-309.  The District Defendants' Motion to Dismiss Count VI for failing to

comply with § 12-309 fails because Plaintiff's civil-conspiracy claim is only asserted

against individual defendants in their individual capacities.  See Section III(A)(2), *supra*.

Section 12-309, therefore, does not operate as a bar to any of Plaintiff's claims.

### 5.   *Punitive Damages*

Plaintiff here also seeks punitive damages from all parties.  Where extraordinary

circumstances are not present, "there can be no recovery of punitive damages against a

municipality absent a statute expressly authorizing it.  There is no such statute in this

jurisdiction."  Smith v. Dist. of Columbia, 336 A.2d 831, 832 (D.C. 1975) (*per curiam*).  As the

D.C. Circuit has clarified:

> The term "extraordinary circumstances" is a term of art in this
> context.  In Daskalea v. District of Columbia, 227 F.3d 433 (D.C.
> Cir. 2000), the court, following [City of Newport v. Fact Concerts,
> Inc., 453 U.S. 247 (1981)], clarified the meaning of "extraordinary
> circumstances" to refer to circumstances such as "where a
> jurisdiction's taxpayers are directly responsible for perpetrating the
> policies that caused the plaintiff's injuries" or "where a
> municipality or its policymakers have intentionally adopted the
> unconstitutional policy that caused the damages in question."

Butera v. Dist. of Columbia, 235 F.3d 637, 658 (D.C. Cir. 2001).  Because Plaintiff makes no

such showing, his claims for punitive damages against the District of Columbia must be

dismissed.

   The District Defendants do not ask the Court to dismiss the punitive-damages claim

against the individual defendants, see Mot. at 15; Reply at 5, and punitive damages may be

awarded against individuals in the District of Columbia.  See, e.g., Chatman v. Lawlor, 831 A.2d

395, 400 (D.C. 2003).  The Court thus does not address this issue in relation to Rhee or

Presswood.

   The Court, therefore, will limit Count I to Rhee and Presswood in their individual

capacities, strike the claim for punitive damages against the District of Columbia, and otherwise

deny the District Defendants' Motion.

   B.     The New Teacher Project

   In also moving to dismiss, The New Teacher Project first argues that Plaintiff has not

sufficiently set forth a claim against it for breach of contract for failure to pay tuition.  Even if

that claim is allowed to proceed, TNTP contends, Plaintiff nevertheless cannot receive punitive

damages.  Because the Court dismisses this count against TNTP, it does not reach the issue of

punitives.  TNTP next argues that Plaintiff's claim for civil conspiracy against it is similarly

deficient.  The Court agrees with this point as well.  Finally, TNTP argues that the Complaint

should be dismissed for failure to comply with the service requirements of Federal Rule of Civil

Procedure 4(m).  Because the Court dismisses all counts against TNTP, such an argument is

moot.

1.      *Breach of Contract: Failure to Pay Tuition – Count V*

Plaintiff claims that TNTP breached its contract with him when it ceased paying his

tuition to the GWU program.  SAC, ¶¶ 143-49.  Plaintiff alleges that he was to receive tuition

support "[i]n exchange for serving as a special education teacher and doing a satisfactory job."

Id., ¶ 31.  Although Plaintiff does not plead the details of the contract with specificity, he implies

that the contract, assuming it exists, was for Plaintiff to periodically receive tuition

reimbursement as long as he remained a special education teacher in good standing at DCPS.

Plaintiff alleges that the cause of his loss of tuition support was "his wrongful termination."  Id.,

¶ 147.  As a result, "because [he] met his obligations under his agreement with DCTF, TNTP,

and/or DCPS, the withholding of Plaintiff's tuition support constitutes a breach of contract."  Id.,

¶ 148.  Plaintiff does not actually allege, however, that he met his obligations under the

agreement – namely, continued employment.  In fact, he alleges just the opposite – that he was

terminated.  Id., ¶¶ 99-102.

Even if that termination was wrongful and beyond Plaintiff's control, and even if Plaintiff

alleges he fulfilled his other obligation under the agreement – doing a satisfactory job – it does

not alter the fact that Plaintiff did not meet his end of the bargain under the agreement.  He might

have defenses were he sued for breach of contract, but that is not the case here.  Instead, he is the

14

one suing.  "[I]t is incumbent on the promisee, in order to state a claim upon which relief can be

granted, to allege in his complaint that all conditions have been fulfilled." Royal McBee Corp. v.

Bryant, 217 A.2d 603, 607 (D.C. 1966); see also Fed. R. Civ. P. 9(c).  Plaintiff has not alleged

that he was "serving as a special education teacher and doing a satisfactory job," SAC, ¶ 31,

when TNTP stopped providing him with tuition support.  Therefore, Plaintiff has not alleged

sufficient facts for the Court to draw the inference that TNTP breached a contract with him to

reimburse his tuition.

### 2.  *Civil Conspiracy – Count VI*

Plaintiff labels his sixth count as "Civil Conspiracy to Wrongfully Terminate Plaintiff."

SAC at 20.  In the District of Columbia, "'[t]here is no recognized independent tort action for

civil conspiracy….'  '[C]ivil conspiracy depends on performance of some underlying tortious

act.'  It is thus 'not independently actionable; rather, it is a means for establishing vicarious

liability for the underlying tort.'" Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d

724, 738 (D.C. 2000) (quoting Waldon v. Covington, 415 A.2d 1070, 1074 n.14 (D.C.1980));

Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)).  A proper complaint would allege the

underlying tort in a separate count.  See Hakki v. Zima Co., No. 03-CV-9183, 2006 WL 852126,

at *5 n.7 (D.C. Super. Mar. 28, 2006) ("In the District of Columbia, however, conspiracy is not

an independent tort; in order to establish liability of an alleged conspirator, a plaintiff must plead

and prove an underlying tort in which the conspirator participated." (citing Exec. Sandwich

Shoppe, 749 A.2d at 738)).  Even assuming Plaintiff meant to bring a separate claim for

wrongful termination, he could not do so.

First, the Court has no reason to believe Plaintiff was other than an at-will employee.

Although he alleges in a conclusory fashion that "[he] was not an at-will employee," SAC, ¶ 139,

his sole support is that "[he] agreed to teach for a minimum of four years."  Opp. at 13; SAC, ¶ 136; <u>see also</u> SAC, ¶ 32.  Plaintiff misunderstands the nature of an employment relationship.  He assumes – incorrectly – that his promise to teach at DCPS for at least four years also implies a reciprocal promise on the part of DCPS to employ him for at least that period of time.  While the factual allegations presented in Plaintiff's complaint must be presumed true and should be liberally construed in his favor, <u>Leatherman</u>, 507 U.S. at 164, the inference Plaintiff desires this Court to reach – that he was not an employee at-will – is simply not supported by them.  <u>See</u> <u>Trudeau</u>, 456 F.3d at 193.

"It is 'well-settled District of Columbia law' that an employment contract, absent evidence to the contrary, is terminable at the will of either party."  <u>Sorrells v. Garfinckel's,</u> <u>Brooks Bros., Miller & Rhoads, Inc.</u>, 565 A.2d 285, 289 (D.C. 1989) (quoting <u>Minihan v. Am.</u> <u>Pharm. Ass'n</u>, 812 F.2d 726, 727 (D.C. Cir. 1987)); <u>see also</u> <u>Littell v. Evening Star Newspaper</u> <u>Co.</u>, 120 F.2d 36, 37 (D.C. Cir. 1941) ("[W]here no such intent [for permanent employment] is clearly expressed [in the contract] and, absent evidence which shows other consideration than a promise to render services, the assumption will be that – even though they speak in terms of 'permanent' employment – the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party.").  Plaintiff has not alleged that he and DCPS clearly agreed that his employment would be permanent or that he would not be terminable for any fixed period of time.  All he alleges is that he promised "to teach for a minimum of four years."  <u>See</u> Opp. at 13; SAC, ¶¶ 32, 136.  Therefore, in keeping with "well-settled District of Columbia law" and because there is no evidence to the contrary, this Court believes Plaintiff's contract "is terminable at the will of either party."  <u>See</u> <u>Sorrells</u>, 565 A.2d at 289.

Even though Plaintiff was an at-will employee, he still may have a wrongful-termination claim. In <u>Adams v. George W. Cochran & Co.</u>, 597 A.2d 28, 30 (D.C. 1991), the D.C. Court of Appeals held that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." <u>Id.</u> at 34.

The DCCA then expanded this exception six years later in its *en banc* decision in <u>Carl v. Children's Hospital</u>, 702 A.2d 159 (D.C. 1997). The plaintiff in <u>Carl</u> was a nurse who was terminated after she testified in the City Council against the hospital's interests and also as an expert witness for plaintiffs in malpractice cases. <u>Id.</u> at 160. The Court held that the "'very narrow exception' created in <u>Adams</u> should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." <u>Id.</u> A majority of the DCCA – as constituted by those joining Judge Terry's concurrence and Judge Steadman's dissent – held that "the recognition of any such [future public-policy] exception must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." <u>Id.</u> at 162 (Terry, J., concurring). In addition, "[t]his court should consider seriously only those arguments that reflect a clear mandate of public policy - i.e., those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." <u>Id.</u> at 164 (Terry, J., concurring) (footnotes omitted).

In this case, Plaintiff never actually cites any constitutional provision, statute, or public policy in his Second Amended Complaint.  Even in his Opposition, once TNTP raised the issue, Plaintiff only generally claims that "his disclosures [of Presswood's instruction to change student test scores] and refusal to follow Presswood's orders to engage in illegal and unethical activity were the cause of his termination."  Opp. at 16.  This clearly does not suffice to fulfill <u>Carl</u>'s requirement of "a clear mandate of public policy."  <u>See Carl</u>, 702 A.2d at 164; <u>Lurie v. Mid-Atlantic Permanente Medical Group, P.C.</u>, 729 F. Supp. 304, 326 (D.D.C. 2010) ("Even if one accepts plaintiff's account of himself as a whistleblower punished for his good deeds, plaintiff is unable to identify an appropriate public policy on which to base his claim."); <u>Chisholm v. Dist. of Columbia</u>, 666 F. Supp. 2d 96, 117 (D.D.C. 2009) ("The plaintiff does not point to any fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support her position, but rather points to the general policy of the Courts' Comprehensive Policies . . . ."); <u>Davis v. Gables Residential/H.G. Smithy</u>, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful discharge claim is deficient, however, because it does not identify any public policy purportedly violated by his termination."); <u>Martin v. American Univ.</u>, No. 98-CV-7174, 1999 WL 1125168, at *2 (D.C. Cir. 1999) ("it is not clear that the code provisions [namely, the District's codes that regulate nurses] on which Dr. Martin relies articulate the type of public policy necessary to trigger the public policy exception") (citation omitted).

Additionally, even if the Court were to assume that the public policy Plaintiff relies on is embodied in the D.C. Whistleblower Protection Act, a statute Plaintiff mentions several times in his Second Amended Complaint (though never in relation to the conspiracy charge), his claim would still fail.  This is because the public-policy exception has been further limited by "the D.C.

Court of Appeals[, which] held the exception unavailable 'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation.'"  Kassem v. Washington Hosp. Center, 513 F.3d 251, 254 (D.C. Cir. 2008) (quoting Nolting v. National Capital Group, Inc., 621 A.2d 1387, 1390 (D.C. 1993)).

The DCWPA's statutory remedies, including "a civil action for monetary and equitable relief," foreclose the possibility of Plaintiff using the DCWPA as the statutory basis for the public-policy exception.  Carter v. Dist. of Columbia, 980 A.2d 1217, 1226 (D.C. 2009) (citing D.C. Code § 1-615.54); see also LeFande v. Dist. of Columbia, No. 09-CV-217, 2012 WL 1865393, at *4 (D.D.C. May 21, 2012) ("Even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will employment where the legislature has already 'creat[ed] a specific, statutory cause of action to enforce' the public policy at issue."  (quoting Carter, 980 A.2d at 1225-26)); Hoskins v. Howard Univ., No. 11-CV-1779,  2012 WL 928310, at *10 (D.D.C. Mar. 20, 2012) (refusing to apply public-policy exception when the statute relied upon to prove a public policy contains a remedy for its violation); Stevens v. Sodexo, Inc., No. 11-CV-1161, 2012 WL 699459, at *4 (D.D.C. Mar. 6, 2012) ("[P]olicy must arise from a statute or regulation that does not provide its own remedy." (citing Carson v. Sim, 778 F. Supp. 2d 85, 97 (D.D.C. 2011))).

## IV.    Conclusion

For the reasons articulated herein, an Order accompanying this Memorandum Opinion will grant in part and deny in part the District Defendants' Motion to Dismiss and grant TNTP's.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 2, 2012